IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOHN A. UPHOFF-FIGUEROA

  Plaintiff,

      v.

PUERTO RICO ELECTRIC POWER AUTHORITY, ET AL.,

    Defendants.

Civ. No. 03-1509(PG)

## OPINION AND ORDER

On May 9, 2003, plaintiff filed suit against the Puerto Rico Electric Puerto Authority ("PREPA"), Hector Rosario ("Rosario"), Hector Alejandro ("Alejandro"), and Nitza Vazquez-Rodriguez ("Vazquez") alleging, *inter alia*, violations of his rights under the First, Fifth, and Fourteenth Amendments of the U.S. Constitution, the Constitution of the Commonwealth of Puerto Rico, and Puerto Rico law. On November 20, 2003, the Court[1] issued an Opinion and Order (Docket No. 32) granting defendants' Motion to Partially Dismiss the Complaint. (Docket No. 13.) Partial judgment was entered dismissing with prejudice the claims for violation of equal protection and due process rights against all defendants. The complaint was dismissed with prejudice in its entirety as to defendant Rosario. The only remaining claims were the political discrimination and personal injury claims against Vazquez, Alejandro, and PREPA. The complaint against the unknown defendants was dismissed without prejudice as well. (Docket Nos. 33 & 41[2].)

On June 15, 2004, plaintiff's counsel sought leave to withdraw. (Docket No. 66.) New counsel made an appearance on August 9, 2004, and requested an extension of time to review the case and determine whether amended pleadings were warranted. (Docket No. 71.) Plaintiff then asked to be granted leave to file an amended complaint. (Docket No. 73.) Following the order granting leave to file, the Amended Complaint was filed on November 15, 2004. (Docket No.

---

[1] This case was originally assigned to Judge Carmen C. Cerezo. On May 17, 2004 the case was reassigned to the undersigned in exchange for Civil 03-1100. (See Docket Nos. 60 & 61.)

[2] A Partial Judgment was issued and then amended.

75). The named defendants now are PREPA, Rosario, Alejandro, Vazquez, Ramon L. Rodriguez-Melendez, Maria Mercedes Mendez-Rivera, Ana T. Blanes-Rodriguez-Rodriguez, and Maria Hernandez-Torrales (collectively "defendants"). Summons were served on December 16 and 20, 2004, and responsive pleadings were due on January 5 and 9, 2005, respectively. (Docket No. 82.)

On January 4, 2005, PREPA moved to dismiss the amended complaint arguing that *res judicata* barred the new allegations and causes of actions. (Docket. No. 83.) Following several requests for extensions of time, plaintiff filed his response in opposition on February 10, 2005. (Docket No. 93.) Seven days later, the remaining defendants also moved to dismiss the complaint on failure to state a claim grounds. (Docket No. 97.) On March 15, 2005, defendant PREPA filed a motion joining the other co-defendants' motion to dismiss. (Docket No. 103.) All parties filed their respective responses and replies thereto[3]. (Docket Nos. 104, 106, 116).

Upon carefully reviewing the pleadings, for the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** co-defendants' motions to dismiss. (Docket Nos. 83, 97, & 103.)

<u>**FACTUAL BACKGROUND**</u>[4]

Plaintiff John A. Uphoff-Figueroa ("plaintiff") is an attorney at law and an active member of the New Progressive Party ("NPP"), a fact known by defendants. He has been working at PREPA for nearly eight years as a career employee. On October 29, 2000, he was appointed "temporary substitute" of the Administrator of the Environmental Law Affairs Division. ("the Division")

In November 2000, general elections were held in Puerto Rico and a change of administration took place from the NPP to the Popular Democratic Party ("PDP"). The newly elected Governor appointed defendant Rosario as Executive Director of PREPA. Plaintiff alleges that a political shift also took place within PREPA inasmuch as Rosario appointed well-known PDP members to different supervisory positions.

Plaintiff claims that since August 2001, defendant Alejandro, then Director of Environmental Planning and Protection and supervisor of the

---

[3] Plaintiff sought leave to file a sur-reply but the same was denied (<u>See</u> Docket Nos. 112, 119, & 125.)

[4] The Court culls the relevant facts from the Amended Complaint, Docket No. 75 at 8-18.)

Division, began to discriminate against him for political reasons. For example, plaintiff avers that Alejandro undermined his authority and diminished his duties in the Division. He further claims that Alejandro would give orders to employees under plaintiff's supervision without consulting or informing him. Plaintiff states that these situations created an environment of lack of respect towards him and that he felt humiliated by Alejandro's actions.

On June 24, 2002, defendant Vazquez, a PDP member, was appointed Interim Administrator of the Division in substitution of plaintiff. Plaintiff claims that in appointing her, defendants did not comply with PREPA's Regulation of Non-Union Career Employees because they overlooked him for the position, did not publish it within the established term, allowed him to remain in the position as "Temporary Substitution" for a longer period than the one permitted, and did not follow the procedures of selection based on seniority.

On July 8, 2002, plaintiff filed an administrative complaint alleging violation of PREPA's Regulation for Non-Union Career Employees. Since then, he claims Vazquez reassigned all of his duties and began to mistreat and humiliate him in front of the Division's employees. Specifically, it is alleged that Vazquez began to distribute memoranda in which she relieved him of all authority within the office. All of these actions, plaintiff claimed in the original complaint, were motivated by a politically discriminatory animus.

### THE AMENDED COMPLAINT[5]

Plaintiff claims that since the filing of the original complaint, the political discrimination against him increased in retaliation for having filed suit against defendants. For example, he alleges that all the other attorneys of the Division have been reclassified and promoted, and have received salary increases but that he has not been promoted and has not received a salary raise[6]. Also, it is alleged that all the people who have been announced as

---

[5] In the amended complaint, plaintiff included the same allegations as in the original complaint, (see Docket No. 1 at 4-8, ¶¶ 10-24 and Docket No. 75 at 8-11, ¶¶ 20-32, 34-35), but added new factual averments regarding events that transpired following the filing of the original complaint.

[6] For example, plaintiff claims that in August of 2004, attorney Santiago, a PDP follower, who had only been at the office for a few days, was promoted from Attorney II (M8) to Attorney III (M9).

witnesses against plaintiff have received retroactive promotions and/or salary raises, however, neither plaintiff or his witness, Ms. Mariel Nieves, have been promoted or had their salaries raised.

Plaintiff further claims that at the office, only PDP employees are given more responsibilities, are invited to meetings and seminars in Puerto Rico and aborad, are given keys to the office, and are invited to activities at PREPA. Plaintiff specifically alleges that Vazquez and Alejandro have tried to push him out of the office and have even locked him out of the office in the afternoons pursuant to a new policy which he claims is but a pretext to discriminate against him.

It appears from the allegations in the complaint that plaintiff was advised, at some point after the filing of the complaint and for the first time in the eight years he has worked at PREPA, that he had to request permission from Vazquez to stay at the office late in the afternoons. Plaintiff claims he explained to her that he needed to stay after regular working hours to complete his work as he usually did but that he was not given a key to his office notwithstanding that all the other attorneys and PDP employees had keys. Plaintiff avers there were times when he was deliberately locked out of his office by Vazquez and when he returned to his office to pick up his belongings including the keys to his house and car, he was unable to do so. Plaintiff avers that since he did not have a key, he had no alternative but to beg other employees to take notice when he went out of the office and to not lock him out. He claims that these employees, all PDP members, laughed at him and mocked him because of the situation.

Additionally, plaintiff alleges that since September 2003, Vazquez began to hold meetings with the attorneys of the Division but excluded him and locked the door in his face if he happened to pass by the room where the meeting was being held. For example, he alleges that there was a presentation in which the entire staff of the Division, with the exception of plaintiff and Ms. Mariel Nieves, participated in and that he was not even allowed to have knowledge of the contents of the presentation, or when and where it was going to be exhibited.

During the month of October 2003, Mrs. Carmen Gallardo from the office of Adjudication of Positions, began calling attorney Vazquez to inquire about

her position and its publication. The position was finally published and plaintiff applied for it. Plaintiff claims that the publication of the position was fixed to allow Vazquez to apply for it given that it was not until October 2003 that she changed from a temporary to a regular conditional employee, prerequisite for competing for the position. Plaintiff further claims that they did not publish the position before particularly while he temporarily held the position because they did not want him to eventually occupy the position because he was an active member of the NPP. It is further alleged that PREPA employees changed the list of eligible candidates for the position to exclude him because of his political affiliation and that plaintiff's personnel file was altered and a written certification from PREPA's former Executive Director was removed.

Also in October 2003, plaintiff asked Ms. Mariel Nieves, the legal secretary of the Division, to prepare some documents at her computer. Because it was not working, she used another computer that had been installed at the office for common use. Plaintiff claims that when Vazquez found out about it, she started screaming at Ms. Nieves using obscene language and demanded her to stop and immediately give her the documents. When Plaintiff learned about it, he went to Vazquez's office to inquire about the situation but Vazquez screamed at him leaving him no choice but to leave her office to avoid further problems.

Lastly, plaintiff claims that between May and June 2004, he learned that the offices of the Environmental Law Affairs Division were going to be moved to the 7th floor. The office assigned to him was much smaller than the one he previously had. Vazquez, however, was assigned to an office larger than her previous one and larger than the office plaintiff had when he was the Administrator.

## DISCUSSION

PREPA moves to dismiss plaintiff's amended complaint arguing *res judicata* bars plaintiff from re-filing claims already dismissed by the court by adding new facts in an effort to repair the faults of his original complaint. (Docket No. 83.) PREPA contends that the Partial Judgment dismissing with prejudice plaintiff's earlier federal claims is a final judgment on the merits and that the two suits contain the same parties and essentially identical allegations,

hence, *res judicata* precludes plaintiff's amended complaint. The other co-defendants join PREPA's motion. (<u>See</u> Docket No. 97.)

To the contrary, plaintiff argues that in addition to the factual allegations that were also included in the original complaint, he alleges new facts and causes of actions and included new defendants, therefore, his claims are not barred by *res judicata*. Specifically, he avers that he included conspiracy claims under 42 U.S.C. §1985, 1986, and 1988, which were not alleged in the original complaint, and also brings a retaliation claim under the civil rights act and under 42 U.S.C. §2000E-3A. Furthermore, that for the first time he alleges violation of the Fair Labor and Standards Act, 29 U.S.C. §215(a)(3) and 216, and that there are new supplemental law claims pursuant to the Constitution of the Commonwealth of Puerto Rico, Law 100, 29 L.P.R.A. § 146, Law 115, 29 L.P.R.A. § 194, and Article 1803 of the Puerto Rico Civil Code. Because these new allegations were not considered by the Court when it rendered its previous Opinion and Order, plaintiff argues *res judicata* does not preclude his new complaint.

## I. **<u>Res Judicata</u>**

Under the general rules of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980); <u>see</u> <u>Breneman v. United States</u>, 381 F.3d 33, 38 (1st Cir. 2004)(citations omitted). As premised above, res judicata "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and ... encourage[s] reliance on adjudication." <u>Gonzalez-Pina v. Rodriguez</u>, 407 F.3d 425, 430 (1st Cir. 2005)(citing <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980)). "Res judicata applies when the following exist: (1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions. <u>Gonzalez-Pina</u>, 407 F.3d at 430(citing <u>Breneman</u>, 381 F.3d at 38); <u>see</u> <u>In re Colonial Mortgage Bankers Corp.</u>, 324 F.3d 12, 16 (1st Cir. 2003). "[T]he burden of establishing the affirmative defense of res judicata rests upon the proponent." <u>Davignon v. Clemmey</u>, 322 F.3d 1, 17 (1st Cir. 2003).

We first determine whether the partial judgment issued earlier is a final

judgment for purposes of res judicata.

Dismissals under Federal Rule of Civil Procedure 12(b)(6) are dismissal on the merits and therefore, have res judicata effect. See Northeast Erectors Ass'n of BTEA v. Secretary of Labor, Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995). See also U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 235 (1st Cir. 2004). The Court's partial judgment was entered pursuant to the Opinion and Order dismissing the claims under Federal Rule of Civil Procedure Rule 12(b)(6). Accordingly, the partial judgment has preclusive effect.

The "sufficient identicality between the parties" requirement is met at least as to defendants Rosario, Vazquez, and Alejandro. These three co-defendants were part of the original complaint and have been included as defendants in the amended complaint. (See Docket Nos. 1 and 75.)

We next determine whether there is sufficient identicality between the causes of action asserted in the original and amended complaint.

A review of the amended complaint reveals that the first thirteen factual allegations, as well as the fourteenth and the fifteenth are literally identical to the allegations in the original complaint. (See Docket No. 1 at 4-8, ¶¶ 10-24 and Docket No. 75 at 8-11, ¶¶ 20-32, 34-35.) Thus, the Court is barred from revisiting these factual allegations with regards to the due process and equal protection claims against defendants Vazquez and Alejandro as they were considered and ruled upon by the Court in the Opinion and Order dismissing said claims. Likewise, the Court is barred from revisiting these factual allegations as they relate to any claim against Rosario inasmuch as the Court dismissed the original complaint in its entirety against him. (See Docket Nos. 32 and 33.) In other words, the only surviving claims from the original complaint are still the political discrimination and personal injury claims against Vazquez, Alejandro, and PREPA.

With regards to the new factual allegations in the amended complaint, the Court finds that they relate to events which transpired after the filing of the complaint. Therefore, the Court finds it is not barred by res judicata from considering plaintiff's new allegations as they "involve subsequent conduct, and thus lack sufficient identicality of causes of action with the earlier suit." See Gonzalez-Pina, 407 F.3d at 430 (1st Cir. 2005)(internal

quotation marks omitted). Defendants' "[s]ubsequent conduct, ... even if ... of the same nature as the conduct complained of in a prior [complaint], may give rise to an entirely separate cause of action." Id. (citations omitted). Accordingly, the surviving claims are:

- the political discrimination claim regarding plaintiff's reinstatement against co-defendants Vazquez and Alejandro; and the newly added defendants based on the new factual allegations
- the retaliation for political reasons claim against all defendants;
- the Fifth, Ninth and Fourteenth Amendment claims based on the new factual allegations;
- the conspiracy claim under §§ 1983, 1985, 1986 based on the new factual allegations;
- the retaliation claim under 42 U.S.C. §2000E;
- the supplemental law claims(a)(3); and
- the Fair Labor Standards Act claim pursuant to 29 U.S.C. §215(a)(3) and 216[7].

This conclusion does not end the Court's inquiry inasmuch as defendants also challenge plaintiff's amended complaint on failure to state a claim grounds pursuant to Fed. R. Civ. P. 12(b)(6).

**II. Rule 12(b)(6) standard**[8]

When ruling on a 12(b)(6) motion a court must accept all well-pled factual averments as true and draw all reasonable inferences in favor of the non-moving party. Berezin v. Regency Savings Bank, 234 F.3d 68, 70 (1st Cir. 2000). A complaint should not be dismissed unless it appears beyond any doubt that the non-moving party can prove no set of facts which may support a claim entitling him or her to relief. Ronald C. Brown v. Hot, Sexy, and Safe Productions, Inc., 68 F.3d 525 (1st Cir.1995); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957). While this standard is very generous to the non-moving party, it does not follow that it is completely "toothless". Zeus Projects Limited v. Pérez & Cia, 187 F.R.D. 23, 26 (D.P.R. 1999). The complainant may not rest merely on "unsupported conclusions or interpretations of law." Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971

---

[7] Plaintiff states in the complaint that he seeks reclassification and promotion; payment of wages and benefits lost; and an additional amount as liquidated damages plus attorneys fees and costs pursuant to the Fair Labor and Standards Act, 29 U.S.C. §215(a)(3) and 216. Defendants have not challenged plaintiff's claim under the Fair Labor Standards Act, accordingly, the Court needs not discuss it at this time.

[8] The Court is aware that defendant PREPA (Docket No. 92) has answered the Amended Complaint, and therefore, its motions are actually motions for judgment on the pleadings pursuant to Rule 12(c).  Nevertheless, the standard of review is identical to the Rule 12(b)(6) standard.  See Scheuer v. Rhodes, 416 U.S. 232, 236-237 (1974).

(1st Cir. 1993). In order to survive a motion to dismiss, he or she must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." <u>Gooly v. Mobil Oil Corp.</u>, 851 F.2d 513, 515 (1st Cir.1988). The Court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir.1996).

Defendants[9] move to dismiss the complaint alleging that plaintiff's position was a trust position and therefore, political affiliation was an appropriate qualification for continued employment. (Docket No. 97.) They further argue that plaintiff fails to state a claim under 42 U.S.C. § 2000e-3, 42 U.S.C. §§ 1983 & 1985(3), the Fifth Amendment, the Ninth Amendment. (<u>Id.</u>) Lastly, they argue they are entitled to qualified immunity. (<u>Id.</u>)

### A.   Political Discrimination claim

As a general rule, the First Amendment protects public employees from adverse job decisions based solely on their political affiliation and beliefs. See <u>Board of County Com'rs, Wabaunsee County, Kan. v. Umbehr</u>, 518 U.S. 668, 675 (1996); <u>Rutan v. Repub. Party</u>, 497 U.S. 62, 75 (1990); <u>Branti v. Finkel</u>, 445 U.S. 507, 516-17 (1980); <u>Elrod v. Burns</u>, 427 U.S. 347(1976); <u>Gomez v. Rivera Rodriquez</u>, 344 F.3d 103, 109-110 (1st Cir. 2003). "Like most general rules, this rule admits [sic] certain well-defined exceptions." <u>Galloza v. Foy</u>, 389 F.3d 26, 28-34 (1st Cir. 2004). "One such exception is reserved for instances in which political affiliation is an 'appropriate requirement for the effective performance of the public office involved'." <u>Id.</u>, at 28 (<u>quoting Branti</u>, 445 U.S. at 518). Accordingly, when faced with a political discrimination claim, the Court must determine: first, whether plaintiff's position enjoys protection against political patronage, and if not, whether the plaintiff suffered and adverse employment action for political reasons. See <u>Branti</u>, 445 U.S. at 517-20.

"[D[etermining whether a position is "confidential" or "policymaking" is not a matter of inserting variables into a known equation and crunching the numbers." <u>Galloza</u>, 389 F. 3d 29; <u>see</u> <u>Elrod</u>, 427 U.S. at 367 ("[n]o clear line can be drawn between policymaking and nonpolicymaking positions"); <u>Vazquez</u>

---

[9] PREPA moved to join the other co-defendants' motion to dismiss on the grounds that plaintiff's position was a trust position. (Docket No. 103.)

Rios v. Hernandez Colon, 819 F.2d 319, 324 (1st Cir.1987) (noting that "[c]onfidentiality has many facets" in this context). "Nor can the question be resolved by the simple expedient of examining the government's classification of a particular position (although that taxonomy may be entitled to some weight)". Galloza, 389 F.3d at 29. (citations omitted). See Romero Feliciano v. Torres Gaztambide, 836 F.2d 1, 3 (1st Cir.1987) (warning that this court, in determining whether political affiliation is an appropriate job requirement, has "resisted rigid use of labels"). In sum, "the determination as to whether a particular office is policymaking or confidential in nature, so as to make political affiliation an appropriate requirement for holding it, is fact-specific." Galloza, 389 F.3d at 29.

The First Circuit has established a two-step analysis designed to aid the court in determining whether political affiliation is an "appropriate requirement for the effective performance of the public office involved." Jimenez Fuentes v. Torres Gaztambide, 807 F.2d 236, 241 (1st Cir.1986). First, the Court must determine "whether the position at issue, no matter how policy influencing or confidential it may be, relates to partisan political interests ... [or] concerns." Id. (quoting Branti, 445 U.S. at 519. Second, the court must determine whether "the particular job resembles that of a policymaker, a communicator, or a privy to confidential information." Id. at 242.

The first step of the test requires that the position "involve decision making on issues where there is room for political disagreement on goals or their implementation." Mendez-Palou v. Rohena-Betancourt, 813 F.2d 1255, 1258 (1st Cir.1987). "The second step involves a further inquiry into the "inherent powers and privileges of the position." Ramirez v. Arlequin, 357 F.Supp.2d 416, 422 (D.P.R. 2005)(quoting Jimenez-Fuentes, 807 F.2d at 241). "Among the indicia material to the second element are relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders. Ortiz-Pinero v. Rivera-Arroyo, 84 F.3d 7, 12 (1st Cir. 1996)(citations and internal quotation marks omitted). Although fact-intensive, "the ultimate determination whether a government position is political presents a question of law for the court,

rather than an issue of fact for jury resolution." Id. (citing McGurrin Ehrhard v. Connolly, 867 F.2d 92, 93 (1st Cir.1989)(noting that the "important constitutional and governmental interests surrounding the application of the [Branti/Elrod ] exception" make it more suitable for determination by the court)).

> I. __Whether PREPA engages in decision making on issues where there is room for political disagreement on goals or their implementation.__

We first determine "whether the agency employing the plaintiff handle[s] matters potentially subject to partisan political differences, and should permit a tentative conclusion about the extent to which the particular position has the capacity to influence the resolution of such matters." Galloza, 389 F.3d at 29 (quoting Mendez-Palou v. Rohena-Betancourt, 813 F.2d 1255, 1258 (1st Cir. 1987)(internal quotation marks omitted).

Defendants argue that the functions or services of PREPA involve decision-making on issues as to which there is room for political disagreement on goals or their implementation. They make reference to the Rodriguez-Burgos v. Electric Energy Authority, 853 F.2d 31, 35 (1st Cir. 1988) case in which the Court concluded that it was self-evident that PREPA is engaged in what might be termed a politically sensitive mission. See id. (holding that PREPA "exercises broad powers in the implementation of the island's economic development policies, [which] in turn, is one of the most pressing political issues on the island.") The Court agrees. PREPA is involved in decision making processes that revolve around politically sensitive issues. Thus, the political nature of PREPA's functions is not in dispute.

> ii. __Whether the duties of the Administrator of the Division resemble those of a policymaker whose function is such that party affiliation is an appropriate requirement for continued employment.__

The second prong of the test requires a "detailed examination into whether the specific responsibilities of the position sufficiently resemble those of a policymaker or office-holder whose functions are such that party affiliation is an appropriate criterion for tenure." Galloza, 389 F.3d at 29(citations omitted). To this end, "the nature of the responsibilities is critical." Id. (quoting Elrod, 427 U.S. at 367. Accordingly, the Court must examine "a wide array of factors, including the relative compensation level

for the position, the technical expertise (if any) required to do the job, the extent to which the position involves supervision and control over others, the degree to which the position confers authority to speak in the name of higher-ups who themselves are policymakers, the influence of the position over programs and policy initiatives, and the public perception of what the position entails." Galloza, 389 F.3d at 29-30. Lastly, "consideration should be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals." Id. (quoting Elrod, 427 U.S. at 368). "This inquiry focuses not on what functions a particular occupant of the position may in fact carry out from time to time, but, rather, on the essential attributes of the position itself. Galloza, 389 F.3d at 30. Therefore,"if a formal job description exists, it is important for an inquiring court to look to the specifics of that document." Id. See Roldan-Plumey v. Cerezo-Suarez, 115 F.3d 58, 62 (1st Cir. 1997) (finding the "job description to be the best, and sometimes dispositive, source for determining the position's inherent functions"); Ortiz Piñero v. Rivera Arroyo, 84 F. 3d 7, 13 (1st Cir. 1996) (stating that "written, signed job descriptions may provide highly probative evidence as to the responsibilities inherent in a particular government position, and may even prove dispositive"). Indeed, the Court should, whenever possible, rely on the written job description because it contains precisely the information the Court needs concerning the position's inherent powers and responsibilities to address the issue. Mendez-Palou v. Rohena-Betancourt, 813 F.2d 1255, 1260 (1st Cir. 1987).

Defendants argue that the position of the Administrator of the Division resembles those of a policymaker whose functions are such that party affiliation is an equally appropriate requirement. They claim that plaintiff was not dismissed, rather reinstated to the position he held before he was temporarily appointed Administrator. They argue it was an action intended to serve the interest of the agency that employees in policymaking position be in accord with the elected officials goals and policies. To the contrary, plaintiff states that his position was not politically sensitive but of a technical and administrative nature, and that contrary to his replacement, he had the knowledge, skills and experience to perform the duties of the

position. He avers that the only reason he did not remain in the position was because of his political affiliation which was not an appropriate requirement.

Defendants have proffered the Administrator of Environmental Matters Division's official job description. (Docket No. 97, Exhibit A.) "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)(citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Documentary evidence outside the complaint may be considered only when: the documents' authenticity is not in dispute, the documents consist of official public records, the documents are central to the plaintiff's claim, or they are sufficiently referred to in the complaint. See Alternative Energy, 267 F.3d at 34; Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998).

Here, the documents' authenticity is not in dispute. Furthermore, the document is part of official public records. Lastly, the document is of essence to plaintiff's claim. Hence, it is "integral" to assessing the complaint's allegations. See Young v. Lepone, 305 F.3d 1, 11 (1st Cir.2002) ("When the factual allegations of a complaint revolve around a document whose authenticity is unchallenged, that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)")(citations and internal quotation marks omitted). Accordingly, we review the job description.

The Duties and Responsibilities as expounded in the job description read as follows:

> This is a legal job consisting in [sic] directing an office with the purpose of counseling the staff of the Legal Advisor [sic] Office as to the development and formulation of judicial strategies for the effective attention [sic] of cases related with [sic] environmental law, judicial, quasi-judicial and extra-judicial claims or complaint [sic]. It represents the Authority before the Courts of Justice and administrative agencies in environmental law cases and in other matter [sic] the Legal Advisor may assign. It executes its duties under general supervision and exercise [sic] a high degree of discretion and independent judgment.

Docket No. 97, Exhibit A.) As is evident, the Administrator has broad discretion to develop and formulate and to some extent even implement the

agency's environmental law policies given that he or she represents PREPA in all cases, both in judicial and administrative forums. Illustrative Samples of the job include:

- Directing and supervising the office which is devoted to advise the staff of the Legal Advisor's Office in matters related to the formulation of legal strategy to be followed in all environmental law cases and others that the Legal Advisor deems necessary in which PREPA is a party.

- Formulating the strategies or positions of PREPA with regards to extrajudicial settlements and assisting other attorneys and staff from the Judicial Affairs Directorate in the handling and obtaining of judicial or extra-judicial settlements against PREPA.

- Seeing to and answering legal consultations that may be submitted by PREPA officers and other state or federal agencies.

- Representing PREPA before the Courts of Justice and administrative agencies.

- Examining claims filed against PREPA and imposition of fines against PREPA for environmental law and policy violations, considering the actions and omissions of its officers and the operation, conservation, construction, and services units as well as provide the necessary counseling in order to take preventive and corrective measures that would avoid such claims.

- Participate in the coordination of and attending meetings with PREPA officers, as well as with other officers from other government agencies, federal or local, in Puerto Rico, as well as outside of Puerto Rico.

- Coordinating with other employees of other directorates matters related with the application and enforcement of the laws, orders, agreements, and federal environmental regulations, as well as state regulations.

It is clear from the preceding discussion that the duties of the position of Administrator of the Environmental Law Affairs Division resemble those of a policymaker. The Administrator directs an office whose primary purpose is to advise the Director of Planning and Environmental Protection in the development and formulation of legal strategies to follow in all matters regarding environmental law. As such, it is directly involved in policymaking or working in close relationship to policymaking in one of the most important aspects of PREPA's business: the environment. In other words, the Administrator creates and advises PREPA officials of the agency's policy and vision when it comes to environmental law matters, and executes liaison responsibilities with federal and local agencies and courts. Indeed, in the list of required skills for the position of Administrator, the first

requirement is precisely an extensive knowledge of PREPA's general policy. See Flynn v. City of Boston, 140 F.3d 42, 46 (1st cir. 1998)("it is enough that the official be involved in policy, even if only as an adviser, implementer, or spokesperson").

This case strongly resembles the Ruiz-Roche v. Lausell case in which the Court held that political affiliation was a proper qualification for the legal counsel to the president of the Puerto Rico Telephone Company. Id., 665 F. Supp. 99, 100 (D.P.R. 1987). There the job description indicated that the position in question was "one of a highly-placed confidant and advisor to the company president, as well as one having managerial and supervisory functions." Id. The duties of the position included: advising the president on projected legislation, generally supervising the legal department's operation, interpreting matters of legal consequence that would impact the operation or financial climate of the company, and coordinating all activities between the company and the Commonwealth and Federal governments. Id. See also Davila Aleman v. Feliciano Melecio, 992 F. Supp. 91, 99 (D.P.R 1998)(finding that the position of counsel is the quintessential trust position.)

As in the Ruiz-Roche case, the official job description of PREPA's Administrator of the Environmental Law Division indubitably implicates policy and supports a finding that the position is a "trust" position for which political affiliation is a proper requirement.  The degree to which the position confers authority to the Administrator to speak in the name of PREPA's higher-ups who themselves are policymakers, the influence of the position over programs and policy initiatives, as well as the public perception of what the position entails, clearly indicate that the Administrator's position is a "trust" position. Accordingly, because we find that political affiliation is a proper qualification for the position at issue, plaintiff's political discrimination claim must be dismissed.

### B.   Civil Rights Retaliation claim

To succeed in his retaliation claim, "plaintiff must show that he engaged in constitutionally protected conduct and that retaliation against this protected conduct was a substantial or motivating factor for the underlying state action." Ramos-Biaggi v. Martinez, 98 F.Supp.2d 171, 177-178 (D.P.R. 2000)(citations omitted). Plaintiff claims in his amended complaint that he

has been subjected to further discrimination for having filed the original complaint in this case. (<u>See infra</u>, Amended Complaint discussion, pp. 4-6). Reading the complaint in the light most favorable to the non-movant, the Court finds that plaintiff has pled sufficient facts to state a claim of retaliation against co-defendants Vazquez and Alejandro. The Court finds, however, that the amended complaint lacks the necessary factual averments to establish a retaliation claim against co-defendants PREPA, Rosario, Ana T. Blanes-Rodriguez-Rodriguez, Ramon L. Rodriguez-Melendez, Maria Mercedes Mendez-Rivera, and Maria E. Hernandez-Torrales. Hence, only the claim as to Vazquez and Alejandro should remain. Accordingly, the Court grants in part and denies in part defendants' motions to dismiss with regards to the retaliation claim for political reasons.

### C.   **Fifth Amendment claim**

The due process clause of the fifth amendment provides that: "No person shall ... be deprived of life, liberty, or property, without due process of law ...." U.S. Const. amend. V., see <u>Gerena v. Puerto Rico Legal Services, Inc.</u>, 697 F.2d 447, 449 (1st Cir. 1983). It is well-settled that the Fifth Amendment "applies to actions of the federal government, not those of private individuals." <u>Id.</u> (citing <u>Public Utilities Commission v. Pollak</u>, 343 U.S. 451, 461 (1952). Here, plaintiff's complaint is brought against state and not federal actors. Accordingly, the Fifth Amendment claim must be dismissed.

### D.   **Ninth Amendment claim**

The Ninth Amendment states: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. Amend. IX. As defendants aver, plaintiff has not stated what federal right under the Ninth Amendment defendants have violated. Therefore, the Court dismisses the Ninth Amendment claim.

### E.   **Fourteenth Amendment**

Defendants argue that the December 11, 2003, amended partial judgment dismissed with prejudice the claims of deprivation of property rights without due process of law and violation of the equal protection clause, therefore, plaintiff cannot amend the complaint to raise them again. Indeed, as with the political discrimination claim, the Court is barred by *res judicata* from considering the due process and equal protection claims based on the

allegations in the amended complaint that are the same as the allegations in the original complaint. The due process and equal protection claim based on defendants' subsequent conduct, however, is not barred by *res judicata*.

To prevail in a procedural due process claim, plaintiff must show that he had a property interest as defined by state law, and that defendants, acting under color of state law, deprived him of that interest without a constitutionally adequate process. PFZ Properties, Inc. v. Rodriquez, 928 F.2d 28, 30 (1st Cir. 1991). See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 542-43 (1985); Board of Regents v. Roth, 408 U.S. 564, 574, (1972). Property interests subject to due process protection are not created by the Constitution but are created by "existing rules or understandings that stem from an independent source such as state law". Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). "To have a property interest in a benefit, a person clearly must . . . have a legitimate claim of entitlement to it based on a contractual or statutory language, or mutually explicit understandings. Id.; Perry v. Sindermann, 408 U.S. 593, 601 (1972).

Likewise, the "Fourteenth Amendment, through the Equal Protection Clause, prohibits state action that treats those who are similarly situated in a differential manner. Lopez-Rosario v. Police Dept., 126 F.Supp.2d 167, 173 174 (D.P.R. 2000). See City of Cleburne, Texas v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). "In other words, the government may not treat similarly situated people differently based on classifications made without justification." Davila Aleman, 992 F.Supp. at 101. "The character of the classification determines the requirements of the justification." Id. (citations omitted). See Plyler v. Doe, 457 U.S. 202, 216-17 (1982); Schweiker v. Wilson, 450 U.S. 221, 234-35. A plaintiff who claims that a "governmental action violates the Equal Protection Clause must show that she [or he] is 'the victim of intentional discrimination'." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256(1981). See Garcia-Figueroa v. Puerto Rico, 204 F.Supp.2d 281, 286 (D.P.R. 2002). Thus, to state a claim under the Equal Protection Clause, plaintiff must allege not only that defendants were aware of his membership in a protected group and/or of his protected expression, but also that defendants acted because of his protected conduct. See Personnel Administrator v. Feeney, 442 U.S. 256, 279 (1979).

Upon reviewing the allegations in the complaint in the light most favorable to plaintiff, the Court finds that plaintiff has failed to state a claim of due process against defendants. Plaintiff is merely rehashing an argument already considered by this Court in its previous Opinion and Order dismissing the due process claim. Plaintiff once again alleges that defendants deprived him of his due process rights when they removed him from his temporary position as Administrator of the Division and failed to consider him for the position once published. The Court already determined that plaintiff lacked a property interest over his temporarily appointment as Administrator. Plaintiff has not alleged new facts that would state a due process claim. Therefore, his due process claim should be dismissed.

With regards to the Equal Protection claim, it is unclear from the allegations in the complaint what actions by defendants plaintiff claims were in violation of his rights under the Equal Protection Clause. (See Docket No. 75 at, pp. 18 ¶ 65 & 19 ¶68.) If he is claiming that he was unequally treated when he was not considered for the position of Administrator of the Division, his allegation fails inasmuch as "classification based on political affiliation survives rational relation scrutiny where the classification was used in making employment decisions regarding a trust employee." Davila Aleman, 992 F.Supp. at 101. His claim withstands defendants' motion to dismiss, however, with regards to the new factual allegations of unequal treatment but only as to co-defendants Vazquez and Alejandro. Plaintiff has outlined sufficient facts to "convey specific instances of unlawful discrimination." Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir.1992). For example, the allegation regarding the keys to the office. Plaintiff alleges that he was not given a key to his office but that all the other attorneys and PDP employees were given keys. Furthermore, the Court cannot, at this stage of the proceedings determine whether co-defendants Vazquez and Alejandro's decisions or actions where motivated by a legitimate interest and were rationally related to the advancement of said interest.

It is well-settled that "political affiliation has long been recognized as a classification that may not, by itself and absent justification, serve as a basis for disparate treatment among similarly

situated people." <u>Davila Aleman</u>, 992 F.Supp. at 101 (<u>citing</u> <u>American Sugar Refining Co. v. Louisiana</u>, 179 U.S. 89, 92 (1900). However, it is "neither a suspect nor a quasi-suspect classification." <u>Clayton v. Town of West Warwick</u>, 898 F.Supp. 62, 74 (D.R.I. 1995)(<u>citing</u> Laurence H. Tribe, American Constitutional Law 1439-43 (2d. ed.1988)). Accordingly, defendants' alleged conduct in categorizing plaintiff based on his political affiliation "need only have been rationally related to the advancement of a legitimate government interest." <u>Davila Aleman</u>, 992 F.Supp. at 101. The Court cannot make such a determination solely based on the pleadings.

Having carefully read the complaint and drawn all inferences in the most advantageous way to plaintiff, the Court finds it lacking the necessary factual allegations to establish an equal protection claim against co-defendants PREPA, Rosario, Ana T. Blanes-Rodriguez-Rodriguez, Ramon L. Rodriguez Melendez, Maria Mercedes Mendez-Rivera, and Maria E. Hernandez Torrales. Hence only the claim as to Vazquez and Alejandro remains. Accordingly, the due process claim shall be dismissed with prejudiced and the equal protection claim shall be dismissed as to all defendants except Vazquez and Alejandro.

### F.    <u>Conspiracy under 42 U.S.C. §§ 1983, 1985, 1986</u>.

Plaintiff alleges a conspiracy to deprive him of his civil rights, actionable under 42 U.S.C. §§ 1983, 1985(3), and 1986. A civil rights conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." <u>Earle v. Benoit</u>, 850 F.2d 836, 844 (1 st Cir. 1988)(citations and internal quotation marks omitted.) For a "conspiracy to be actionable under section 1983 the plaintiff has to prove that there has been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws." <u>Id.</u> (<u>quoting</u> <u>Landrigan v. City of Warwick</u>, 628 F.2d 736, 742 (1st Cir.1980). Likewise, to state a claim of conspiracy under § 1985(3):

> a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons ..., of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the

> conspiracy, and (4) either (a) an injury to person or
> property, or (b) a deprivation of a constitutionally
> protected right or privilege.

Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). The conspiracy must be

motivated by some "racial, or perhaps otherwise class-based, invidiously

discriminatory animus." Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 14 (1 st

Cir. 2003) (citations omitted); see Griffin v. Breckenridge, 403 U.S. 88, 102

(1971); Andrade v. Jamestown Housing Authority, 82 F.3d 1179, 1192 (1st Cir.

1996); Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 34 (1st Cir.1996).

Furthermore § 1986 states:

> Every person who, having knowledge that any of the
> wrongs conspired to be done, and mentioned in section
> 1985 of this title, are about to be committed, and
> having power to prevent or aid in preventing the
> commission of the same, neglects or refuses so to do,
> if such wrongful act be committed, shall be liable to
> the party injured ... for all damages caused by such
> wrongful act, which such person by reasonable diligence
> could have prevented.

42 U.S.C. § 1986.

Defendants argue that the complaint does not contain any specific

allegations of actions showing a conspiracy, and thus, the Court should

dismiss plaintiff's conspiracy claims.

Reading the amended complaint[10], even in the light most favorable to

plaintiff, we find it fails to allege the necessary facts to show that a

conspiracy existed. Simply stating that some of defendants' actions were part

of a conspiracy to deprive him of his rights is insufficient. Furthermore,

plaintiff does not allege what actions defendants took that were motivated by

racial or other class-based invidiously discriminatory animus. See

Torres-Rosado, 335 F.3d at 14. In sum, the complaint contains no allegations

to support a claim under either §§ 1983, 1985 or 1986. The Court agrees with

the defendants in that although plaintiff generally alleges a conspiracy (or

---

[10] The term conspiracy is mentioned 11 times in the complaint, however, only three
statements are actual factual allegations regarding the conspiracy claim. First, "[s]ome of
the defendants included in this complaint were part of the conspiracy with those who in fact
acted directly to deprive Plaintiff of her [sic] rights-there was a meeting of the minds of
defendants in regard to the intentional deprivation of plaintiff's rights" is the first.
(Docket No. 75 at 2.) Second, making reference to ¶¶ 20-32, 34-35 of the amended complaint,
"[t]hese actions described above were part of the conspiracy against Plaintiff of [sic]
codefendants due to the political discrimination against him." (Docket No. 25 at 11.).
Third, "[d]efendant [sic] knew of Plaintiff's interest in and qualification for the position
but denied it to him. All other defendants besides codefendants [sic] Nitza Vazquez
conspired against him because they were all active PDP members and he was an active NPP."
(Docket No. 75 at 14.)

a "meeting of the minds") among defendants to discriminate against him, he fails to allege any specific facts indicating the existence of such a conspiracy.

> [F]ederal courts have come to insist that the complaint state with specificity the facts that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy. It has long been the law in this and other circuits that complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts.

Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir.1977) (citing Dunn v. Gazzola, 216 F.2d 709, 711 (1st Cir.1954); see Torres-Rosado, 204 F.Supp.2d at 266-67. Indeed, "simply alleging that defendants acted jointly and in concert and under color of law is insufficient." Torres-Rosado, 204 F.Supp.2d at 266-67 (citing McGillicuddy v. Clements, 746 F.2d 76 (1st Cir. 1984). Accordingly, plaintiff's conspiracy claims are dismissed.

### G.   Retaliation under 42 U.S.C. § 2000e-3

Defendants argue that the complaint should be dismissed against all defendants except PREPA because there is no personal liability under Title VII.

"Although the First Circuit has yet to decide whether a Title VII plaintiff may maintain a suit against an individual in his personal capacity, most circuits have held that no personal liability can be attached to agents or supervisors under Title VII." Gomez Gonzalez v. Guidant Corp., 364 F.Supp.2d 112, 115-116 (D.P.R. 2005). See Tomka v. Seiler Corp., 66 F.3d 1295 (2nd Cir. 1995); Dici v. Com. of Pa., 91 F.3d 542 (3rd Cir. 1996); Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 180-81 (4th Cir. 1998); Grant v. Lone Star Co., 21 F.3d 649 (5th Cir. 1994) cert. denied, 513 U.S. 1015 (1994); Wathen v. General Elec. Co., 115 F.3d 400, 405-06 (6th Cir. 1997); Gastineau v. Fleet Mortgage Corp., 137 F.3d 490, 493-94 (7th Cir. 1998); Lenhardt v. Basic Inst. of Tech., Inc., 55 F.3d 377 (8th Cir. 1995); Miller v. Maxwell's Int'l, Inc., 991 F.2d 583 (9th Cir. 1993); Haynes v. Williams, 88 F.3d 898 (10th Cir. 1996); Cross v. Alabama, 49 F.3d 1490, 1504 (11th Cir.1995); Smith v. Lomax, 45 F.3d 402 (11th Cir. 1995); Gary v. Long, 59 F.3d 1391, 1399 (D.C.Cir.), cert. denied, 516 U.S. 1011 (1995).

Following the majority of the circuit courts, this District Court has

held that individual defendants are not liable under Title VII. See Gomez Gonzalez, 364 F.Supp.2d at 115[11].

In the case at bar, co-defendants Rosario, Alejandro, Vazquez, Ramón R. Rodriguez-Meléndez, María Mercedes Mendez-Rivera, and María E. Hernández-Torrales are not plaintiff's employer. Hence, the Title VII claim against them should be dismissed with prejudice.

With regards to PREPA, to prove his retaliation claim under Title VII, plaintiff "must establish that 1) he engaged in protected conduct under Title VII; 2) he suffered an adverse employment action; and 3) the adverse action is causally connected to the protected activity. 42 U.S.C.A. § 2000e3(a)." Vidal v. Ramallo Bros. Printing, Inc., 380 F.Supp.2d 60, 62 (D.P.R. 2005). See Gu v. Boston Police Dep't., 312 F.3d 6, 14 (1st Cir.2002). Title VII was enacted to protect employees from workplace discrimination based on a persons race, color, religion, sex, or national origin. See 42 U.S.C.A. §§ 2000e-2; 2000e-3. The allegations in the complaint do not state a claim of employment discrimination due to race, color, religion, sex, or national origin. Accordingly, plaintiff's Title VII retaliation claim against PREPA must be dismissed[12].

#### H. Supplemental Law Claims

Usually, when all federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over a plaintiff's supplemental

---

[11] Vargas v. Fuller Brush Co. of Puerto Rico, 336 F.Supp.2d 134, 139 (D.P.R. 2004); Velez-Sotomayor v. Progreso Cash and Carry, Inc., 279 F.Supp.2d 65, 72 (D.P.R. 2003); Padilla Cintron v. Rossello Gonzalez, 247 F.Supp.2d 48, 59 (D.P.R. 2003); Cotto v. Citibank, N.A., 247 F.Supp.2d 44, 47 (D.P.R. 2003); Maldonado-Cordero v. AT & T, 73 F.Supp.2d 177, 184 (D.P.R. 1999); Canabal v. Aramark Corp., 48 F.Supp.2d 94, 97 (D.P.R. 1999); Acevedo Vargas v. Colon, 2 F.Supp.2d 203, 206 (D.P.R. 1998); Pineda v. Almacenes Pitusa, Inc., 982 F.Supp. 88, 93 (D.P.R. 1997); Contreras Bordallo v. Banco Bilbao Vizcaya de Puerto Rico, 952 F.Supp. 72, 74 (D.P.R. 1997); Hernandez v. Wangen, 938 F.Supp. 1052, 1065 (D.P.R. 1996); Anonymous v. Legal Services Corp. of Puerto Rico, 932 F.Supp. 49, 51 (D.P.R. 1996). See also Danio v. Emerson College, 963 F.Supp. 61, 62 (D.Mass. 1997); Chatman v. Gentle Dental Center of Waltham, 973 F.Supp. 228, 237 (D.Mass. 1997). But see Santiago v. Lloyd, 33 F.Supp.2d 99, 102 (D.P.R. 1998).

[12] Furthermore, prior to bringing a Title VII complaint in federal court, a federal employee must first exhaust his administrative remedies. See Brown v. General Services Admin., 425 U.S. 820, 832-33 (1976); Morales v. Mineta, 220 F.Supp.2d 88, 91 (D.P.R.2002). "Failure to exhaust administrative remedies bars the courthouse door, as courts long have recognized that Title VII's charge-filing requirement is a prerequisite to the commencement of a suit." Lebrón-Rios v. United States Marshal Serv., 341 F.3d 7, 14 (D .P.R.2003); Vizier v. University of P.R., 323 F.Supp.2d 256, 262 (D.P.R.2004)(citing Bonilla v. Muebles J.J. Alvarez Inc., 194 F.3d 276, 278 (1st Cir.1999)). Plaintiff has not alleged or presented any document to support that he has exhausted the required administrative remedies prior to filing suit in federal court. Thus, even if plaintiff had pled sufficient facts to withstand defendants Rule 12(b)(6) challenge, the Court lacks jurisdiction over plaintiff's Title VII claim and must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1).

jurisdiction claims. <u>See</u> <u>Camelio v. American Federation</u>, 137 F.3d 666, 672 (1st Cir. 1998)("Certainly, if the federal claims are dismissed before trial, . . ., the state claims should be dismissed as well."); <u>Rodriguez v. Doral Mortgage Corp.</u>, 57 F.3d 1168, 1177 (1st Cir.1995). Here, the Court has not dismissed all of plaintiffs federal claims, thus, it will exercise supplemental jurisdiction over plaintiff's state law claims.

**III. <u>Qualified Immunity</u>**

        Defendants also move to dismiss plaintiff's complaint arguing they are entitled to qualified immunity.

        Government officials performing discretionary functions are protected from civil damages if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). When evaluating a claim of qualified immunity, the Court must engage in a two-step inquiry. <u>Kelley v. LaForce</u>, 288 F.3d 1, 6 (1st Cir. 2002)(<u>citing</u> <u>Wilson v. Layne,</u> 526 U.S. 603, 609(1999)). The Court must first determine whether plaintiffs allege a "deprivation of a constitutional or federal right by the defendant official." <u>Kelley</u>, 288 F.3d at 6 (internal citations omitted). "If so, the court must [then] 'determine whether that right was clearly established at the time of the [official's] alleged violation'." <u>Wilson</u>, 526 U.S. at 609. If both questions are answered affirmatively, the Court should proceed to determine "whether an objectively reasonable official would have believed that his conduct was lawful 'in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct'." <u>Kelley</u>, 288 F.3d at 6 (<u>quoting</u> <u>McBride v. Taylor</u>, 924 F.2d 386, 389 (1st Cir.1991)). The First Circuit has recognized that "[a]lthough . . . 'the immunity question should be resolved, where possible, in advance of trial,' pre-trial resolution sometimes will be impossible because of a dispute as to material facts." <u>Kelley</u>, 288 F.3d at 7 (<u>quoting</u> <u>Swain v. Spinney</u>, 117 F.3d 1, 10 (1st Cir. 1997). In such a cases,"[o]nly after the facts have been settled can the court determine whether the actions were objectively reasonable so as to fall under the qualified immunity". <u>Kelley</u>, 288 F.3d at 7 (<u>citing</u> <u>Swain</u>, 117 F.3d at 10).

        There can be no question that plaintiff's First Amendment rights to be

free from any sort of political discrimination were clearly established at the time of defendants' actions. See <u>Guillemard Gionorio v. Contreras Gomez,</u> 322 F.Supp.2d 153, 161-62(D.P.R. 2004), and the cases cited therein. Notwithstanding, at this stage of the proceedings, the Court must determine whether defendants could have believed their actions were lawful in light of clearly established law and the information they possessed at the time of their allegedly unlawful conduct. We find this query revolves around factual inquiries regarding matters such as whether defendants actions were taken pursuant to policy, regulations, or other considerations which are unknown to the Court and cannot be determined from the face of pleadings. Defendants may raise the issue in a properly supported motion for summary judgment.

### CONCLUSION

WHEREFORE, the Court **GRANTS** PREPA's motion to dismiss on *res judicata* grounds **(Docket No. 83),** and **GRANTS IN PART AND DENIES IN PART** defendants' motion to dismiss on failure to state a claim grounds. **(Docket Nos. 97, & 103.)** Partial Judgment shall be entered accordingly.


**IT IS SO ORDERED.**

In San Juan, Puerto Rico, November 18, 2005.


                                        S/JUAN M. PEREZ-GIMENEZ
                                        U. S. DISTRICT JUDGE